# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**JEMEL LAJUAN HAMILTON,**

     **Petitioner,**

**v.**                                         **Case No. 5:16-cv-259-Oc-02PRL**

**SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,**

     **Respondents.**

_____/

## <u>ORDER</u>

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Dkt. 1. At the Court's direction, Respondents responded to Petitioner's petition (Dkt. 8) and filed relevant portions of the state court record, including the transcript of Petitioner's trial (Dkt. 9). Petitioner filed a reply in support of his petition. Dkt. 12. The Court has reviewed the entire record (including the trial transcript). Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a).

Upon consideration, the Court concludes that the petition is due to be dismissed as untimely.

## I.  BACKGROUND

### A.  Trial, Conviction, and Sentencing

Petitioner was charged in state court in Lake County, Florida, with one count of home invasion robbery with a firearm, three counts of aggravated assault with a firearm, three counts of false imprisonment, and one count of grand theft.  Dkt. 9-1 at 6-9.[1]  A jury trial was held for Petitioner and his co-defendant.  Because Petitioner makes a claim of actual innocence, the Court briefly summarizes the relevant trial evidence here.[2]

The evidence showed that, on the night of November 13-14, 2009, several men robbed the home of Charmaine Roman and her teenage daughters, Tiajade Farquharson and Shanita Somers, at gunpoint.  The men ransacked Roman's house and demanded to know where she kept her money.  One of the men beat Roman repeatedly.  Another of the men stayed with Roman's daughters in Roman's bedroom while the other men were searching the house.  The men stole a television

---

[1] Citations to this document are to the page number assigned when it was filed in CM/ECF.

[2] The Court summarizes only the relevant evidence here.  Specifically, Petitioner's defense at trial was that he did not commit the crime and that he was elsewhere when the crime occurred.  He does not appear to dispute that the robbery occurred or that it happened the way the victims testified it did.  Thus, the Court focuses here on the evidence that connected Petitioner with the crime and his alibi evidence.  Nonetheless, the Court notes that it has reviewed the entirety of the trial transcript.

and several other items. The men were in the house for about two hours and tied Roman and her daughters up before leaving. *Id.* at 96-157, 192-226, 227-40. The State's theory of the case was that the men robbed Roman because she had recently won $20,000 from a scratch-off lottery ticket. *Id.* at 357-58. At trial, Petitioner's counsel maintained that Petitioner could not have committed the crime because he was not there. *Id.* at 332-33.

No forensic evidence tied Petitioner to the crime scene. *Id.* at 73. A crime scene investigator lifted a shoeprint off a car at the scene. *Id.* at 170-71. That shoeprint was never tested against Petitioner's shoes (*id.* at 173-74), but the investigator testified that the nature of the print made it difficult to determine the size of the shoe (*id.* at 172-73). Investigators also lifted fingerprints. *Id.* at 71. None of those prints could be tied to Petitioner (*id.* at 71), but an evidence technician testified that fingerprints can be distorted or destroyed and that he does not always find usable prints at crime scenes (*id.* at 168-69). Blood samples gathered at the scene were analyzed, but those samples came back as a match to Roman. *Id.* at 190. The State's DNA expert was not able to match Petitioner to any evidence taken from the crime scene, but he testified that it would be unlikely for enough "touch DNA" to be recovered from a crime scene to allow for analysis. *Id.* at 190-91.

Given the lack of forensic evidence, the State's case rested on witness identifications of Petitioner. Trial evidence showed that both Roman and

Farquharson identified Petitioner from photo lineups several weeks after the robbery, although Somers was not able to pick Petitioner out of a photo lineup. *Id.* at 62-66, 79-80, 207, 232-33. At trial, Roman, Farquharson, and Somers all positively identified Petitioner as one of the men who robbed their house. *Id.* at 110, 197, 230. Specifically, Roman testified that Petitioner used a black tee shirt to cover his face, but that the shirt slipped, which allowed her to see part of Petitioner's face for about two seconds. *Id.* at 142-45. Farquharson testified that Petitioner guarded her and her sister in her mother's bedroom while the other men were elsewhere in the house. *Id.* at 196-97, 210. She testified that Petitioner had a black tee shirt covering his face but that she saw part of his face for a "couple of seconds" when the shirt slipped. *Id.* at 210, 219-20. Somers also testified that Petitioner was the man who stayed in her mother's room with her and her sister. *Id.* at 229-30. She said that she saw part of Petitioner's face for a few seconds when the tee shirt he was using to cover it slipped. *Id.* at 237-38. Somers also testified that she remembered seeing a "triangle type" tattoo on the inside of Petitioner's lower arm during the robbery. *Id.* at 234-35. The State presented evidence that Petitioner has a "diamond shape or a triangle shape" tattoo on the lower portion of his wrist. *Id.* at 244.

Counsel for Petitioner and his co-defendant attempted to impeach these witness identifications. Petitioner's counsel asked Roman if she did her own investigation of the case before she viewed the photo lineups, and she answered,

"No, I did not." *Id.* at 147. Petitioner, however, presented a witness who testified that Roman called her several days after the crime and asked questions about the robbery. *Id.* at 282. In his closing argument, Petitioner's counsel argued that Roman's lack of truthfulness about conducting her own investigation generally impugned her credibility. *Id.* at 337. As to Farquharson and Somers, counsel noted discrepancies between their depositions and their trial testimony (including how many of the men were wearing gloves and whether Petitioner's tattoo was on his hand or his lower arm). *Id.* at 205-09, 216-19, 235-36. Both Farquharson and Somers testified that they thought their memories of the robbery were better at trial than at their depositions. *Id.* at 206-07, 236-37.

Petitioner's counsel also presented two alibi witnesses. Petitioner's aunt, Jennifer Hamilton, testified that Petitioner was at her house at the time of the crime. *Id.* at 285-88. She said she remembered the date specifically because it was the weekend after her brother-in-law's funeral. *Id.* at 288. On cross-examination, she admitted that she and Petitioner are like "brother and sister" and are very close. *Id.* at 289. She also admitted that, despite knowing for several months that Petitioner was charged with these crimes, she never went to law enforcement and made a statement. *Id.* at 292. The mother of Petitioner's child also testified. *Id.* at 294. She testified that Petitioner was with her at Jennifer Hamilton's house at the time of the crime. *Id.* at 295. She said she remembered the date specifically because it was

the weekend before the Florida Classic football game. *Id.* at 295-96. On cross-examination, she admitted that, if Petitioner were convicted, she might not get any more money to support her child. *Id.* at 297. She also admitted that she never went to law enforcement to provide a statement despite knowing that Petitioner was charged with crimes. *Id.* at 298-99.

The jury convicted Petitioner of one count of home invasion robbery with a firearm, three counts of false imprisonment, and one count of petit theft. *Id.* at 446-54.[3] It found him found him not guilty of the three counts of aggravated assault. *Id.* The trial court found that Petitioner was a prison releasee reoffender and sentenced him to life imprisonment for the home invasion robbery with a firearm conviction. *Id.* at 459-63. It also sentenced him to five years in prison for each of the three false imprisonment convictions (to run concurrently with each other and concurrently with the conviction for the home invasion robbery with a firearm), and to time served for the petit theft conviction. *Id.* at 465-71.

B.    Direct Appeal

Petitioner timely appealed his conviction, arguing (through counsel) that the trial court erred in denying his motion for judgment of acquittal. *Id.* at 473-88. On March 6, 2012, the Fifth District Court of Appeal ("Fifth DCA") issued a per curiam

---

[3] The trial court granted Petitioner's motion for judgment of acquittal as to the grand theft charge and sent only a charge of petit theft to the jury. *See, e.g.*, Dkt. 9-1 at 268, 277.

affirmance.  *Id.* at 518; *see also Hamilton v. State*, 83 So. 3d 741 (Fla. 5th DCA 2012).  Mandate issued on March 30, 2012.  Dkt. 9-1 at 520.

C.    First Motion for Postconviction Relief and Amendments

Petitioner filed a pro se motion for postconviction relief in state court on April 26, 2012.[4]  *Id.* at 522-538; Dkt. 9-2 at 1-24.  He raised five claims of ineffective assistance of counsel.  *Id.*  The motion did not, however, include a proper oath (Dkt. 9-2 at 8; *see also* Fla. R. Crim P. 3.850(c)), and the trial court struck it as legally insufficient on June 1, 2012 (Dkt. 9-2 at 26).  The trial court gave Petitioner 30 days to file a legally sufficient motion.  *Id.*  On June 28, 2012, Petitioner filed an amended pro se motion for postconviction relief, raising eight claims of ineffective assistance of counsel.  *Id.* at 28-62.  This motion also lacked a proper oath (*id.* at 39, 62), and the trial court struck it on July 17, 2012 (*id.* at 64).  The trial court gave Petitioner 10 days to file a legally sufficient motion.  *Id.*

On July 26, 2012, Petitioner filed another pro se amended motion for postconviction relief, raising eight claims of ineffective assistance of counsel.  *Id.* at 66-98.  This motion included the required oath.  *Id.* at 75, 98.  The trial court denied the motion on March 21, 2013, attaching several documents to the order.  *Id.* at 122-221.  Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's

---

[4] All filing dates for Petitioner in this section are based on the mailbox rule.

order on November 5, 2013.  *Id.* at 271; *see also Hamilton v. State*, 125 So. 3d 162

(Fla. 5th DCA 2013).  Mandate issued on December 2, 2013.  Dkt. 9-2 at 273.

    D.    <u>Second Motion for Postconviction Relief and Amendment</u>

    Petitioner filed his second motion for postconviction relief on November 19,

2013, raising five claims of ineffective assistance of counsel.  *Id.* at 275-80; Dkt. 9-

3 at 1-15.  One of the grounds stated was that his trial counsel unreasonably failed

to "investigate, object and challenge the prosecutor's failure to disclose the true

identity of Charmaine Roman . . . ."  Dkt. 9-2 at 280.  In support of this ground, he

claimed:

> [T]he prosecutor withheld knowledge of the identity of the key
> witness Charmaine Roman and the fact that at the time of the
> defendant's trial, she was being investigated by the Metropolitan
> Bureau of Investigation (MBI) and had been since 2006.  On
> September 30, 2013, Charmaine Roman was arrested and labeled as a
> kingpin in charge of a 'Violent' Jamaican drug-trafficking ring
> involving a 50 people operation . . . .  When police searched her
> condo, agents found . . . four Florida identification cards, multiple
> passports, Social Security cards, credit cards and birth certificates.
> Some of the IDs showed Roman's face but were in the name of
> Antoinette Lewis.  Authorities say she used multiple aliases . . . .
> State Prosecutors said Roman is in the country illegally [and] her true
> identity has not been confirmed . . . .  [State court records show] that
> Charmaine Roman has been charged with thirty-seven (37) various
> felony counts . . . .  Neither the defense nor the court was aware of this
> information . . . .  [T]his information could have been discovered
> during an adequate investigation by counsel . . . .

Dkt. 9-3 at 3-4.  The trial court struck the motion as legally insufficient on

December 6, 2013.  Dkt. 9-3 at 37.  It gave Petitioner 60 days to file a legally

sufficient motion.  *Id.*  Petitioner filed an amended second motion for relief on February 5, 2014.  *Id.* at 39-47.[5]

On March 5, 2014, the trial court entered an order noting that Petitioner had raised new issues in his motion and ordering him to explain why he did not raise those issues in his first motion for postconviction relief.  *Id.* at 49.  Petitioner filed a response to the order on May 2, 2014.  *Id.* at 51-57.  On May 19, 2014, the trial court denied Petitioner's amended second motion for postconviction relief, finding that Petitioner's excuse for failing to raise the new issues in his first motion was inadequate.  *Id.* at 59-60.  Petitioner moved for rehearing, arguing that he had not learned about Roman's arrest and criminal involvement until October 2013, which was after his first motion for postconviction relief was denied.  *Id.* at 62-71.  The trial court summarily denied the motion for rehearing on June 10, 2014.  *Id.* at 73.  Petitioner appealed, and the Fifth DCA issued a per curiam affirmance on November 18, 2014.  *Id.* at 75; *see also Hamilton v. State*, 152 So. 3d 593 (Fla. 5th DCA 2014).  Petitioner filed a motion for rehearing (Dkt. 9-3 at 77-106), but it was denied (*id.* at 108).  Mandate issued on January 8, 2015.  *Id.* at 110.

---

[5] It appears that the memorandum of law in support of this motion has been separated from the motion in the Court's docket.  The memorandum of law in support of this motion appears at Dkt. 9-3 at 17-35.  The memorandum renews Petitioner's previous claim of ineffective assistance of counsel based on his trial counsel's failure to discover that the prosecution was withholding information about Roman and the investigation into her activities.  *Id.* at 23-25.

E.    "Newly Discovered Evidence Brady and Giglio Violation" Motion

On December 2, 2014, Petitioner filed another motion for postconviction relief—this one titled "Newly Discovered Evidence Brady and Giglio Violation." *Id.* at 112-43 (the "newly discovered evidence motion").  In the motion, Petitioner alleged that he had newly discovered evidence, namely that the prosecution knew about the criminal investigation into Charmaine Roman but failed to disclose it and that the prosecution knew that Roman was testifying falsely when she gave her name as "Charmaine Roman" at trial.  *Id.*  On December 11, 2014, the trial court entered an order requiring Petitioner to show cause why these issues were not raised in his second motion for postconviction relief.  *Id.* at 145.  Petitioner filed a response to the order.  *Id.* at 147-49.

On February 23, 2015, the trial court denied the newly discovered evidence motion as untimely.  *Id.* at 151-55.  In relevant part, the trial court explained:

> A motion pursuant to Fla. R. Crim. P. 3.850 must be filed no " . . . more than 2 years after the Judgment and Sentence becomes final unless . . . " an exception applies.  Newly discovered evidence is an exception.  (Fla. R. Crim. P. 3.850(b)(1).)  The Defendant filed his latest motion on December 5, 2014.  The Mandate in the Defendant's direct appeal was issued on March 30, 2012, therefore, the Defendant's motion is not timely unless an exception applies.  The Defendant argues that the allegations in his motion filed on December 5, 2014 are based on newly discovered evidence.  However, those same allegations were made in the Defendant's Second Motion for Post Conviction Relief filed on November 22, 2013 . . . .

> Although the Court struck the Motion filed on November 22, 2013 as legally insufficient, it shows that the Defendant was aware of this

information over a year prior to filing his most recent motion. Furthermore, the Defendant was permitted to file a legally sufficient motion. On February 7, 2014, the Defendant filed an Amended Second Motion for Post Conviction Relief . . . . Beginning on page 7 of the Memorandum, the Defendant re-stated the allegations . . . . On May 19, 2014, the Court denied the Defendant's Amended Second Motion for Post Conviction Relief. The Defendant appealed that denial. The Court's denial was *Per Curiam* Affirmed on November 18, 2014. The Mandate was issued on January 8, 2015.

The Defendant knew about the allegations concerning Charmaine Roman prior to filing his Second Motion for Post Conviction Relief on November 22, 2013. The Defendant stated those allegations about Charmaine Roman in his Motions of November 22, 2013 and February 7, 2014. The allegations contained in the Defendant's latest Motion filed on December 5, 2014, are not based on newly discovered evidence. Therefore, the Defendant's Motion titled Newly Discovered Evidence Brady and Giglio Violation is not timely.

*Id.* at 153-54 (some internal citations omitted).

Petitioner filed a motion for rehearing (*id.* at 157-63), but it was denied (*id.* at 165). Petitioner then appealed (*id.* at 167-69; Dkt. 9-4 at 1-15). The Fifth DCA issued a per curiam affirmance on July 21, 2015 (Dkt. 9-4 at 20 ). Petitioner then moved for rehearing and rehearing en banc. *Id.* at 22-25. The Fifth DCA denied the motion for rehearing and struck the motion for rehearing en banc on August 27, 2015. *Id.* at 27. Mandate issued on September 16, 2015. *Id.* at 29.

F.    Federal Habeas Corpus Petition

Petitioner filed his petition for writ of habeas corpus in this Court on March 28, 2016.  Dkt. 1 at 16.[6]  His petition states fourteen grounds on which he claims he is being held in violation of the Constitution, laws, or treaties of the United States.  Dkt. 1.  Ground thirteen is labeled "Newly Discovered Evidence" and restates the allegations about the State's failure to reveal the true identity of Charmaine Roman and her alleged criminal activities.  *Id.* at  12(k)-12(m).  Ground fourteen is labeled "Prosecutorial Misconduct, Brady and Giglio Violations" and includes similar allegations.  *Id.* at 12(n)-12(p).  Respondents filed a response, arguing that the petition should be dismissed as untimely.  Dkt. 8.  Petitioner filed a reply.  Dkt. 12.  Thus, the matter is now ripe for review.

## II.    **DISCUSSION**

Respondents argue that Petitioner's petition should be dismissed because it was untimely under 28 U.S.C. § 2244(d).  Dkt. 8.  Petitioner contends that his petition was timely under § 2244(d).  Alternatively, he argues that the deadline should be equitably tolled and that he is actually innocent, thereby overcoming the statute of limitations in § 2244(d).  Dkt. 1 at 13(d)-(f); Dkt. 12 at 3-6.  For the

---

[6] Citations to this document are to the page numbers in the original document, not the page numbers assigned when the document was filed in CM/ECF.

reasons stated below, the Court finds that Petitioner's petition is due to be dismissed as untimely.[7]

A.    § 2244(d)'s Statute of Limitations

First, the Court concludes that Petitioner's petition is untimely under § 2244(d)'s statute of limitations.[8]  That section provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[7] In the introductory section of his reply, Petitioner notes that Respondents' response was filed on September 6, 2016.  He contends that this was six calendar days late and asks the Court to strike the response as untimely.  Dkt. 12 at 1-2.  To the extent that this section was intended as a motion to strike Respondents' response, it is denied.

[8] Section 2244 is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996.  Because Petitioner filed his petition after that date, AEDPA and its statute of limitations apply.

(2)　　　The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The parties seem to agree that only subsection (A) is at issue here.[9]  As to that subsection, the 5th DCA affirmed Petitioner's conviction and sentence on March 6, 2012.  Dkt. 9-1 at 519.  Petitioner did not seek review of his conviction in the United States Supreme Court.  Thus, his conviction became "final" for purposes of § 2244(d)—and the one-year statute of limitations for filing a federal petition for writ of habeas corpus began running—on June 3, 2012, the day after the 90-day period for seeking certiorari from the Supreme Court expired.  *See Chavers v.*

---

[9] The form petition for writ of habeas corpus asks petitioners to explain why their claims are not barred by the one-year statute of limitations if the petitioner's judgment of conviction became final over one year ago.  In his response to that prompt (which was signed on March 28, 2016), Petitioner appeared to calculate the running of the statute of limitations from the date his final motion for postconviction relief was denied by the Fifth DCA.  *See* Dkt. 1 at 14-15 ("Petitioner's third post-conviction motion was denied on July 15, 2015.  Therefore, only eight months has transpired for the one year 'AEDPA' to file this Petition.  This Petition is timely filed.").  In their response, Respondents briefed only subsection (A) and asserted that the statute of limitations began running on the date Petitioner's conviction became final.  Dkt. 8 at 8-9.  In his reply, Petitioner did not argue that the statute of limitations should run from a different date. Instead, he argued that his December 2, 2014 newly discovered evidence motion was "properly filed" and, thus, tolled the statute of limitations pursuant to § 2244(d)(2).  Dkt. 12.  Nonetheless, to the extent that Petitioner argues that subsection (D) should govern, the Court notes that the latest date he possibly learned of the new evidence he presents in the petition was October 31, 2013.  Dkt. 9-3 at 63 ("Roman was arrested on September 30, 2013 by the M.B.I. . . . .  The following month October of 2013 the defendant was informed by family and friends that the victim Charmaine Roman had been arrested . . . .").  At that time, as discussed *infra*, Petitioner had a properly filed motion for postconviction relief pending—his July 26, 2012 amended motion for postconviction relief.  Thus, the statute of limitations would have been tolled by § 2244(d)(2).  It remained tolled until the Fifth DCA issued its mandate on Petitioner's last properly filed motion for postconviction relief (the second amended motion for postconviction relief of February 5, 2014)—that is, until January 8, 2015.  Petitioner did not file his petition for writ of habeas corpus until March 28, 2016—more than a year later.

*Sec'y, Fla. Dep't of Corr.*, 468 F. 3d 1273,1274-75 (11th Cir. 2006) (time to seek Supreme Court review ran from the date the DCA entered its judgment affirming petitioner's convictions, not the date it issued its mandate); Sup. Ct. R. 13.3 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance of the mandate (or its equivalent under local practice)."); *San Martin v. McNeil*, 633 F.3d 1257, 1266-67 (11th Cir. 2011) (statute of limitations for federal habeas claim began running the day after the Supreme Court denied petition for writ of certiorari).

Petitioner filed motions for postconviction relief on April 26 and June 28, 2012. Dkt. 9-1 at 522-38; Dkt. 9-2 at 1-24, 28-62. Neither motion included a proper oath, and the trial court struck both motions. Dkt. 9-2 at 26, 64. Because these motions lacked a proper oath, they were not "properly filed" for purposes of § 2244(d)(2) and could not toll the statute of limitations. *See Hurley v. Moore*, 233 F.3d 1295, 1297-98 (11th Cir. 2000) (finding that a Rule 3.850 motion that did not contain the written oath required by Florida law and which was stricken by the state court without prejudice with leave to amend is not "properly filed" under § 2244(d)(2) and does not toll the limitations period for a federal petition for writ of habeas corpus).[10]

---

[10] Petitioner does not contest this point in his reply. Instead, he contends that the "dispositive issue" is whether his "Newly Discovered Evidence motion pending from December

15

Petitioner's first "properly filed" motion for purposes of § 2244(d)(2) came on July 26, 2012, when he amended his earlier motions and included a proper oath. Dkt. 9-2 at 66-98. Arguably, Petitioner's July 26, 2012 motion related back to the original April 26, 2012 motion and tolled the statute of limitations as of April 26, 2012. *Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1248 (11th Cir. 2017) (citations omitted) (concluding that, under Florida law, when a postconviction motion is stricken with leave to amend, the amended motion relates back to the date of the original filing and tolls the statute of limitations as of the date of the original filing).[11] That is, Petitioner arguably had a properly filed motion for purposes of § 2244(d)(2) pending as of April 26, 2012. From that point forward, he had a properly filed motion for postconviction relief pending—and, thus, the statute of limitations remained tolled—until the Fifth DCA issued its January 8, 2015 mandate on his amended second motion for postconviction relief.[12] Because April 26, 2012 was before the statute of limitations began running on June 2, 2012,

---

2, 2014 until September 16, 2015 was 'properly filed' for purposes of tolling the one-year period." Dkt. 12 at 2.

[11] In their response brief, Respondents contended that the statute of limitations was not tolled until the July 26, 2012 motion was filed. Their response was filed before the Eleventh Circuit issued its opinion in *Green*, so they did not have the opportunity to brief whether Petitioner's July 26 motion for postconviction relief "related back" to the April 26 motion under the rationale of *Green*. If the July 26 motion did not relate back to the April 26 motion, however, then the statute of limitations would have expired even earlier, making Petitioner's habeas petition even more untimely. Thus, the Court need not resolve this issue.

[12] Respondents do not argue that the November 19, 2013 motion for postconviction relief—which was stricken by the trial court as legally insufficient—was improperly filed for purposes of § 2244(d)(2). Thus, the Court assumes that it was sufficient to toll the statute of limitations.

the statute of limitations arguably did not begin running at all until January 8, 2015, when the Fifth DCA issued its mandate on Petitioner's amended second motion for postconviction relief.

Respondents argue that the statute of limitations began running on that date. They contend that Petitioner's December 2, 2014 newly discovered evidence motion did not toll the statute of limitations beyond January 8, 2015 because it was untimely and, thus, not "properly filed" for purposes of § 2244(d)(2). Because Petitioner did not file his habeas petition until March 28, 2016 (more than a year after the statute of limitations began running), Respondents assert that the petition was untimely. In his reply, Petitioner argues that his December 2, 2014 newly discovered evidence motion further tolled the statute of limitations. He contends that the newly discovered evidence motion was "properly filed" despite the fact that the state court found it untimely.

Petitioner's argument is foreclosed by the Eleventh Circuit's recent decision in *Jones v. Secretary, Florida Department of Corrections*, 906 F.3d 1339 (11th Cir. 2018). In *Jones*, the petitioner was convicted in Florida state court of aggravated domestic battery and sentenced to 20 years in prison. *Id.* at 1340. His conviction became final in 2007. *Id.*

More than six years later, he moved to vacate his sentence based on newly discovered evidence under Rule 3.850 of the Florida Rules of Criminal Procedure.

*Id.* at 1340. Rule 3.850(b)(1) provides, in relevant part, that (absent an exception not applicable) no motion for postconviction relief shall be filed or considered more than two years after the judgment and sentence becomes final unless the motion "alleges that . . . the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." *See also Jones*, 906 F.3d at 1344. The petitioner alleged that he had only recently discovered that his trial counsel failed to tell him that the prosecutor offered a pre-trial plea deal for 10 years in prison and that, had he known about the deal, he would have accepted it rather than stand trial. *Id.* at 1341. He claimed that his counsel's failure to tell him about the deal amounted to ineffective assistance of counsel. *Id.* The trial court denied the motion as untimely. *Id.* at 1345, 1348-49. It concluded that the petitioner's allegations did not meet the definition of "newly discovered evidence" because he could have discovered the offer within the two-year time limit for presenting newly discovered evidence imposed by Rule 3.850. *Id.* at 1345.

The Eleventh Circuit concluded that the motion did not toll the statute of limitations for purposes of § 2244(d)(2) because it was not "properly filed," reasoning:

> In short, the state court ruled that the Rule 3.850 Motion was
> untimely, and we are required to defer to that ruling. That necessarily
> means that the motion wasn't "properly filed," and thus it didn't toll
> AEDPA's one-year statute of limitations. *See Pace* [*v. DiGuglielmo*,
> 544 U.S. 408, 417 (2005)] (when a state court rejects the petitioner's
> post-conviction motion as untimely, "it was not 'properly filed,' and
> he is not entitled to statutory tolling under § 2244(d)(2)"). *Pace* is
> quite emphatic on this point: "When a postconviction petition is
> untimely under state law, that is the end of the matter for purposes of
> § 2244(d)(2)." *Id.* at 414 (quotation marks and brackets omitted).

*Id.* at 1350 (some internal citations omitted). In so holding, the court rejected the

petitioner's attempted reliance on *Delancy v. Florida Department of Corrections*,

246 F.3d 1328, 1331 (11th Cir. 2001), which could be read "for the proposition

that a Rule 3.850 motion is a properly filed tolling motion as long as the movant

*alleged* in the motion that it fell within the timeliness exception, *regardless of*

*whether the state court later found the motion untimely*." *Jones*, 906 F.3d at 1351

(emphasis in original). As the Eleventh Circuit explained, to the extent that

*Delancy* could be read to support such a proposition, it had been overruled by the

Supreme Court in *Pace* and must be disregarded. *Id.*

　　*Jones* controls the outcome in this case. Like the petitioner in *Jones*,

Petitioner filed a Rule 3.850 motion more than two years after his conviction

became final. And, like the petitioner in *Jones*, Petitioner sought to rely on the

"newly discovered evidence" exception to Rule 3.850. Just as in *Jones*, the state

court concluded that the Petitioner's evidence did not qualify for the exception and

denied the motion as untimely. Under *Jones*, this Court is required to defer to the

state court's determination that Petitioner's motion was untimely. That is, the state court's determination of untimeliness is "the end of the matter" for purposes of § 2244(d)(2). Because the motion was untimely, it was not "properly filed" and it did not further toll the statute of limitations for Petitioner's federal habeas petition.

None of Petitioner's arguments change this conclusion. First, his reliance on *Delancy* (Dkt. 12 at 3) is misplaced because, as stated above, *Delancy* has effectively been overruled by the Supreme Court in *Pace*. Likewise, his attempt to distinguish *Pace* and *Sykosky v. Crosby*, 187 F. App'x 953 (11th Cir. 2006) (Dkt. 12 at 5-6), fails because the Eleventh Circuit's intervening opinion in *Jones* controls this action. Finally, Petitioner's main argument is that the state court was wrong when it decided that his newly discovered evidence motion was untimely. *Id.* at 5 ("The questions for purposes of this appeal is whether the trial court error by denying petitioner's newly discovered evidence motion?"). He asks the Court to revisit that conclusion and decide that the motion was timely. The Court cannot, however, revisit that conclusion because, as the Eleventh Circuit has instructed, federal courts must give deference to a state court's determination that a motion for postconviction relief was untimely, and the state court's determination that such a motion was untimely is "the end of the matter" for purposes of § 2244(d)(2).

In summary, Petitioner's December 2, 2014 newly discovered evidence motion did not toll the statute of limitations for filing a federal habeas claim

because the state court determined that it was untimely. The statute of limitations began running, at the latest, after the Fifth DCA's January 8, 2015 mandate on Petitioner's amended second motion for postconviction relief and expired, at the latest, a year later. Petitioner's petition was filed well after that deadline and was untimely.

B. <u>Equitable Tolling</u>

Next, the Court concludes that Petitioner cannot invoke the doctrine of equitable tolling to save his otherwise untimely habeas petition. In *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court found that a habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation and citation omitted). The petitioner bears the burden of proving circumstances that justify the application of equitable tolling. *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1209 (11th Cir. 2014) (citation omitted). A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." *Id.* (internal quotation and citation omitted). The allegations supporting equitable tolling must be specific and not conclusory. *Id.* (citation omitted).

Petitioner cannot meet either prong of the test. He has not shown that some extraordinary circumstance stood in his way and prevented timely filing. Indeed,

he has not identified any circumstance at all that caused him to file his habeas petition late. Petitioner criticizes the state court's refusal to entertain his claim of newly discovered evidence, but such errors should not have prevented him from filing a timely federal habeas petition. *See, e.g.*, *San Martin*, 633 F.3d at 1267 (citation omitted) (petitioner must show a causal connection between the alleged extraordinary circumstances and the late filing of the petition). Notably, state court review of his December 2, 2014 newly discovered evidence motion was complete on September 16, 2015 (Dkt. 9-4 at 29), when he still had several months remaining to file a federal habeas petition. Petitioner has not explained why he could not have filed the petition by the January 2016[13] deadline, thereby also failing to demonstrate his diligence.[14]

Petitioner's only real argument for equitable tolling appears to be that he is entitled to "the exception of Martinez v. Ryan . . . . " Dkt. 1 at 13(a); *see also id.* at 13(d) ("Petitioner, Mr. Hamilton now request for this Honorable Court to adhere

---

[13] The same can also be said if the date is, as Respondents contend, earlier.

[14] Petitioner does not appear to claim that his incorrect belief that the December 2, 2014 newly discovered evidence motion was "properly filed" for purposes of § 2244(d)(2) constitutes a reason to equitably toll the statute of limitations. But, to the extent he does, such a claim is without merit. *See Wallace v. United States*, 981 F. Supp. 2d 1160, 1164 (N.D. Ala. 2013) (collecting cases) ("Neither miscalculation of the limitations period, nor ignorance of the law, constitutes an extraordinary circumstance that would justify equitabl[e] tolling of the statute of limitations."); *see also Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008) (citations omitted) ("[O]ur precedent provides that federal habeas petitioners who rely upon the timeliness of state post-conviction proceedings to satisfy the requirements of AEDPA do so at their peril.").

this claim to the [equitable] tolling under <u>Martinez claim</u> (supra) when the exception existed for this court to review petitioner's claims."). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel . . . .

*Id.* at 17. But Petitioner's habeas petition fails because it is untimely, not because he procedurally defaulted any of his claims. Moreover, the Eleventh Circuit has specifically "rejected the notion that anything in *Martinez* provides a basis for equitably tolling the filing deadline." *Chavez v. Sec'y, Dep't of Corr.*, 742 F.3d 940, 946 (11th Cir. 2014) (citation omitted); *see also Arthur v. Thomas*, 739 F.3d 611, 630-31 (11th Cir. 2014) ("Because [petitioner's] § 2254 petition was denied due to his complete failure to timely file that § 2254 petition, the Supreme Court's analysis in *Martinez* . . . of when and how 'cause' might excuse noncompliance with a state procedural rule is wholly inapplicable here.").

C.    <u>Actual Innocence</u>

Finally, the Court concludes that Petitioner has not made a sufficient showing of actual innocence to overcome § 2244's statute of limitations. Actual innocence, if proved, allows a court to consider a petitioner's federal habeas petition even if it is time-barred by § 2244. *McQuiggin v. Perkins*,

569 U.S. 383, 386 (2013). The standard for establishing actual innocence is set by *Schlup v. Delo*, 513 U.S. 298 (1995). Under that standard, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. To be credible, a claim of actual innocence must be supported with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

A determination of actual innocence is based on an assessment of "the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332. "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328 (internal quotation and citation omitted). The habeas court does not independently judge whether reasonable doubt exists as to guilt; rather, "the standard requires the [court] to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. As part of that determination, the court must account for how reasonable triers of

fact would use the newly presented evidence to assess the credibility of the witnesses presented at trial. *Id.* at 330. The *Schlup* standard is "demanding." *McQuiggin*, 569 U.S. at 401. It only applies only when a petition "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* (internal quotation and citation omitted).

Petitioner fails to meet the demanding *Schlup* standard. His only new evidence is his claim that Charmaine Roman was being investigated by law enforcement as the possible kingpin of a Jamaican drug-trafficking organization and used multiple aliases. Dkt. 1 at 13(h) (describing the newly presented evidence as "the criminal activity and perjury under oath by the main victim 'Charmain Roman'" and "victim's criminal activities and perjury").[15] Petitioner did not submit any evidence of these claims with his

_____

[15] Outside the actual innocence portion of the petition Petitioner faults his trial counsel for not calling four additional alibi witnesses. Dkt. 1 at 12(i). It is not clear if Petitioner relies on these alibi witnesses as new evidence of his actual innocence. To the extent he does, he has not submitted statements from them, explained who they are, or explained what, exactly, they would have testified to. A petitioner's unsupported conclusions are not sufficient to create a credible showing of actual innocence. *See Hails v. Davenport*, No. 2:13-CV-184-WHA, 2016 WL 1068975, at *2 (M.D. Ala. Jan. 29, 2016), *report and recommendation adopted*, No. 2:13-CV-184-WHA, 2016 WL 1060811 (M.D. Ala. Mar. 17, 2016). Moreover, such evidence would merely have been cumulative of the testimony of his other alibi witnesses. *See Rozelle v. Sec'y, Dep't of Corr.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (actual innocence claim failed in part because new evidence was largely cumulative of what jury heard). And, in any event, a reasonable juror could have decided to credit the three victims' identifications of Petitioner over the testimony of these alibi witnesses. Petitioner also claims that Roman "does not have any

petition, but the state court record incudes copies of news articles describing Roman's arrest and her use of multiple aliases. *See, e.g.*, Dkt. 9-3 at 66-70. Petitioner explains that this evidence was critical because it would have provided a means to attack Roman's credibility: "The main witness' credibility was at stake and therefore making any reasonable person hard to believe based on the evidence presented at trial, making this Petitioner innocent of the crime charged." *Id.* at 13(e); *see also id.* at 13(g).

Even if Petitioner's claims about Roman are credited, though, they do not tend to establish that Petitioner is actually innocent of the crimes of which he was convicted. Instead, they merely serve to impeach Roman. Notably, Petitioner's characterization of the evidence presented at trial as "hearsay over hearsay" (Dkt. 1 at 13(h)) is incorrect. All three of the victims identified Petitioner at trial, and two of them also picked him out of a photo lineup. A reasonable juror could have chosen to accept Roman's

---

proof that it was the Petitioner other than what she heard from [Patricia] Broomfield who heard it from one of the alleged robbers who was also deceased at the time of petitioner's trial and who could not testify that in effect he told Mrs. Broomfield that the Petitioner was one of the participants with him." Dkt. 1 at 13(g). Petitioner presents no evidence to support this claim, and the record does not support it. Instead, Broomfield merely testified that Roman called her a few days after the robbery and asked some questions about the crime. Dkt. 9-1 at 282. Regardless, this "evidence" would, if believed by the jury, at best impeach Roman's identification of Petitioner, which was supported by her testimony that she saw part of his face during the crime. A reasonable juror could have chosen to believe her identification. And the claims about Broomfield's communications with Roman do not impeach Farquharson and Somers's identifications of Petitioner. Thus, none of this new "evidence" supports a finding of actual innocence.

identification of Petitioner as one of the men who robbed her house (both from a photo lineup and in court) even if that juror knew that Roman was suspected of being a drug kingpin and that she might have lied about her name under oath.  After all, even criminals can be robbed.  *See, e.g.*, *Kuenzel v. Comm'r, Ala. Dep't of Corr.*, 690 F.3d 1311, 1317 (11th Cir. 2012) (actual innocence claim failed in part because reasonable jurors could choose to believe the trial testimony of a cooperating witness that the petitioner committed the crime; this was true even though his trial testimony differed from a statement the cooperating witness made implicating another person before he became a cooperating witness and accepted a plea deal for his participation in the crime).

Moreover, even if the impeaching information would have hurt Roman's credibility with the jury, both of Roman's daughters also positively identified Petitioner as one of the men who robbed their house.  They also testified that they briefly saw part of Petitioner's face when his mask slipped, and one of them identified a tattoo on his arm.  Petitioner's new evidence about Roman does nothing to impeach that testimony.  A reasonable juror could have chosen to credit Roman's daughters' testimony instead of Petitioner's alibi witnesses at trial (whom the State impeached by demonstrating their close relationship to Petitioner and their failure to bring

their stories to law enforcement). Having reviewed all of the trial evidence in conjunction with Petitioner's proffered new evidence, the Court cannot conclude that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Accordingly, Petitioner's claim of actual innocence is not sufficient to overcome the statute of limitations and his habeas petition is due to be dismissed as untimely.

## III.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner's petition for writ of habeas corpus (Dkt. 1) is untimely and, thus, dismisses the petition with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability and leave to appeal in forma pauperis are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further,"

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Tampa, Florida, on April 1, 2019.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se